RONA ELECTRIC COMPANY, Plaintiff and Appellant, *v.* JULIO GARRIGA, JR., d/b/a IDEAL TRADING COMPANY, Defendant and Appellee; JULIO GARRIGA, JR., INC., Third Party.

No. O-70-229. Decided May 11, 1971.

*Joseph W. Kiefer* for appellant. *R. Elfrén Bernier* and *Plinio Pérez Marrero* for third party.

MR. JUSTICE MARTÍNEZ MUÑOZ delivered the opinion of the Court.

On May 16, 1966, Rona Electric Co., appellant herein, brought an action in the District Court, San Juan Part, for the recovery of $207.50 against Julio Garriga, Jr., d/b/a Ideal Trading Co. Some days later it obtained from the court, after giving bond, a writ of attachment to secure the effectiveness of judgment, mentioning therein as personal property to be attached, among others, a license plate No. 878-853 Dodge vehicle. On the back of the writ of attachment there appears proof of the return of service by the marshal, concerning the above-described automobile which was "in defendant's possession" at 2215 Cacique Street, Santurce. There also appears proof that on May 27, 1966, summons had been served on defendant Julio Garriga, Jr.

On July 11, 1966, five days after the attachment was levied, Julio Garriga, Jr., Inc., corporation under the name of defendant, filed a complaint within the action for the recovery of money, alleging that it was the owner of the vehicle under attachment; that the same was attached by Rona

Electric having knowledge that the same did not belong to Julio Garriga, Jr., and requested that after the corresponding legal proceedings, judgment be entered declaring "that Julio Garriga, Inc., has been, was, and is the owner of the automobile having this license plate" and to order plaintiff to pay the costs, charges, and attorney's fees.

On July 19, 1966, Julio Garriga, Jr., Inc., reproduced, more or less, the allegations in its "complaint," this time in a "sworn statement" which was identified with Civil No. 66-6681, addressed to the marshal of the District Court, accompanied by a bond of $425, and requesting the annulment of the attachment on the automobile and that the same be delivered "to the third party, Julio Garriga, Jr., Inc." On August 19, 1966, the marshal did so, setting forth on the back of the "Sworn Statement" that:

"In compliance with the procedure established by the Act to provide for the trial of the right to real and personal property, I delivered the aforementioned automobile described in the writ of attachment to the third party."

The marshal returned the bond and the sworn statement to the court. On August 25, 1966, the clerk served written notice to plaintiff Rona Electric, to defendant Julio Garriga, Jr., and to the third party Julio Garriga, Jr., Inc., pursuant to the provisions of the Act to provide for the trial of the right to real and personal property,[1] requesting the appearance of the parties within the term of ten (10) days, "for the pertinent purposes."

The following September 12, Rona Electric, attaching creditor of the automobile, moved for the dismissal of the third-party claim by reason of nonappearance of the third party within the ten days fixed by the law. 32 L.P.R.A. § 1181. The third party objected by a motion.[2]

---

[1] Act of March 14, 1907, 32 L.P.R.A. §§ 1171–1190.

[2] For more clarity we copy below the complete test of said motion:

The third party explained that it had not appeared before because of the "misplacement" of the record, and having to go to the court to examine the record therein, which could not be done until very recently; that the question to be elucidated was the ownership of the attached vehicle, it claiming to be its sole owner, and that the vehicle has never belonged to defendant in this proceeding. It also informed the following:

"4. The appearing party also informs that at the time when the vehicle was returned to it, after giving the bond, its exterior was completely covered with a white dust, like paint, and the generator and the front wheel brake band were damaged, defects which the vehicle did not have at the time of the attachment.

---

## "MOTION

"To The Hon. Court:

"Now comes the third party, Julio Garriga, Jr., Inc., and through the undersigned attorneys respectfully sets forth and prays:

"1. That Julio Garriga, Jr., Inc. appears for the second time pursuant to the Act to provide for the trial of the right to real and personal property, having failed to appear before by reason that, having been notified of the misplacement of the record in this court, it was necessary to come to the court to examine the record therein, which it could not do until very recently.

"2. The question to be elucidated is the ownership of the attached vehicle and for that purpose the appearing party claims that it is the sole owner of the attached vehicle; the license of the vehicle being issued in its name and duly registered in the Department of Public Works.

"3. The attached vehicle does not belong, nor has ever belonged to defendant in this proceeding.

"4. The appearing party also informs that at the time when the vehicle was returned to it, after giving the bond, its exterior was completely covered with a white dust, like paint, and the generator and the front wheel brake band were damaged, defects which the vehicle did not have at the time of the attachment.

"Taking into consideration what has been set forth and reported, and this being the first opportunity to appear in this case, in view of the misplacement of the record, it is prayed that the proceeding be continued in the corresponding manner.

"The undersigned attorney certifies that he has sent copy of this motion to Joseph W. Kiefer, attorney for plaintiff, to his post-office address at 309 De Diego Street, Santurce, Puerto Rico.

"San Juan, Puerto Rico, September 21, 1966."

"Taking into consideration what has been set forth and reported, and this being the first opportunity to appear in this case, in view of the misplacement of the record, it is prayed that the proceeding be continued in the corresponding manner."

The court denied the motion to dismiss, stating that the third party had complied with the provisions of the Act to provide for the trial of the right to real and personal property, and ordered the consolidation of the case (Civil No. 66-6681) with that for the recovery of money (Civil No. 66-3912).

On September 13, 1967, sixteen months having elapsed after having been summoned, defendant Julio Garriga, Jr., answered the complaint for recovery of money filed against him, denying owing any amount whatsoever to plaintiff and alleging as special defense that plaintiff lacked standing to sue. Several days later he addressed some interrogatories to plaintiff seeking to obtain information concerning relations, if any, existing between plaintiff Rona Electric Co. and other corporations and individuals, and whether plaintiff "exists at law and whether it continues in operation."[3]

Plaintiff, on its part, had addressed, on those days, some interrogatories to the third party, Julio Garriga, Jr., Inc., requesting information concerning its alleged property right to the Dodge vehicle.

The third party answered the interrogatories. Plaintiff objected to those sent by the defendant for being contrary to law. On December 4, 1967, the court denied plaintiff's objections and ordered it to answer. On that date, a motion filed by plaintiff's attorney, stating that he had withdrawn from the legal representation of said party, was pending consideration. *Defendant* (let it be read Julio Garriga, Jr.) had objected

---

[3] Although the name of the party which served the interrogatories is not set forth, from the matter object of the discovery which centered about the special defense it is evident that they were served by Julio Garriga, Jr., the defendant, and not by the third party Julio Garriga, Jr., Inc. Both had the same counsel.

to said motion. Thereafter, the record reveals a series of incidents concerning the withdrawal of plaintiff's attorney from the case (accepted and later on set aside by the court) and several motions of the third party, Julio Garriga, Jr., Inc., requesting the setting of a hearing "to present evidence in relation to the damages sustained as a result of the illegal attachment levied."

The court granted the third party's petition. It set a date for the hearing to receive evidence as to "damages" sustained by the third party. On October 16, 1968, a hearing was held. On February 18, 1969, a so-called Resolution and Order was entered where it is stated that after examining the evidence presented by the third party Julio Garriga, Jr., Inc., it appears from the same that as a result of the unlawful attachment on the Buick[4] belonging to it, the third-party corporation sustained the following damages:

"1. Cost of repairing the damages suffered by the vehicle while under attachment ..................................... $350.00

"2. Expenses to annul the attachment and to minimize the damages, including actions, attorney's fees and bond ............................................................................ $275.00

"3. Cost of other transportation during the time the vehicle was under attachment and repair ............ 50.00

$675.00"

Rona Electric Co. was ordered to pay said damages, plus costs, expenses, and $125 for attorney's fees. The company which gave the attachment bond was ordered to deposit the same in court. And it was ordered that the total amount covered by the bond be delivered to the third party.

A motion of Rona Electric Co. to reconsider and set aside said Resolution and Order was denied. Rona Electric maintained that the court lacked jurisdiction, within a proceeding

---

[4] The writ of attachment, the complaint, and the third party's sworn statement describe the automobile as a Dodge.

for the trial of the right to real and personal property, to fix the damages sustained by a third party, since within said proceeding only the property right to the personal property object of attachment can be litigated; that the damages were neither claimed in the proceeding for trial of the right to real and personal property, nor are recoverable within that proceeding; and that the claim for damages has to be prosecuted in a separate suit. Plaintiff informed the court, without it being controverted by the third party, that in September 1967 the latter had filed a complaint for damages in the Superior Court, San Juan Part, against Rona Electric, under No. 67-4968.

The District Court denied the reconsideration requested because it understood that it had jurisdiction to grant the remedy (damages) requested.

Rona Electric appealed to the Superior Court. Its main argument was the following: the third party did not claim compensation for damages in its *complaint*, nor in its third party's *sworn statement;* neither did it request permission to amend such documents for the purpose of claiming damages, but even if it had done so, the court lacked jurisdiction on the matter to grant damages to the third party.

On September 21, 1970, the Superior Court, San Juan Part, affirmed the judgment appealed from and imposed $200 more for attorney's fees in relation to the appeal proceeding.

We agreed to review. All the parties agree in that the action brought by Julio Garriga, Jr., Inc., was prosecuted according to the provisions of the Act establishing a procedure in the cases for the trial of the right to real and personal property approved March 14, 1907, 32 L.P.R.A. §§ 1171–1190. Actually, it was so. The third party offered a sworn statement before the marshal, claiming as its own the automobile object of attachment in the action for recovery of money; it executed and gave bond to this officer, as required by said Act, for double the value of the property claimed as

its own, drafted in the same language of the form of the bond suggested by the Act, 32 L.P.R.A. § 1176. In its sworn statement the third party requested that the automobile be delivered to it. The marshal did so and immediately proceeded to send the sworn statement and the bond to the District Court "for the corresponding action pursuant to the Act to provide for the trial of the right to real and personal property."

The controversy centers about whether, in a suit to decide a third-party claim to ownership, the third party can claim, in addition to a declaration for the best right to personal property object of the trial of the right to real and personal property, the damages caused as a result of the attachment levied by the attaching creditor in the original suit. And in the affirmative, whether, in the present case, the third party lawfully brought a claim for damages, or what is the same: whether the minimum requirements of the due process of law justifying the judgment were complied with.

■ The third-party claim proceeding has as its main objective to determine, in a speedy manner, but with full guarantees for all interested parties, whether the personal property attached as belonging to a specific person, belongs to another claiming it as his own. *Benítez* v. *Rodríguez*, 16 P.R.R. 611 (1910); *Hernández* v. *District Court*, 34 P.R.R. 652 (1925). The law establishes a simple proceeding initiated by a sworn statement given by the interested party setting forth his right of ownership to the personal property attached. The statement is addressed to the marshal in charge of the execution of the writ of attachment or execution; it is requested from the interested party (third party) to give a bond in favor of the attaching creditor in the original suit for an amount equal to double the value of the property according to the assessment made by the marshal, and once it is approved it will be delivered to the third party, in *custodia*

*legis*, until further disposition of the claim by the court. Section 11 of the Act states (32 L.P.R.A. § 1181):

"As soon as the secretary of the court shall have received the oath and bond, he shall notify all parties to the suit of such fact, who shall be required to appear after ten days' notice, and if, after such notice has been perfected, parties appear, the court shall direct an issue to be made in writing and tried as in other cases, and parties to the first suit shall always be parties in the suit to establish the rights of a third party.

"Said issue shall consist of a brief statement of the nature of the right of the claimant by which he seeks to claim as his own and to exclude from the operation of such levy the property in dispute, and of the authority and right of the defendant or defendants in such proceeding to subject the property levied on to the writ."

Section 12 provides that if the plaintiff does not appear, a nonsuit shall be entered against him; and if the defendants (attaching creditors in the original suit) fail to appear, judgment shall be entered by default. Pursuant to § 13 the procedure and practice in the trial *shall conform*, as nearly as practicable, to the Rules of Civil Procedure in force in Puerto Rico.

Although the claims by third parties are based on the ownership of personal property taken from the debtor and they contemplate the main purpose of attaining a judicial adjudication acknowledging the right to the property claimed as its own by the third party, the law expressly provides also the possibility of granting damages in favor of the attaching creditor and against the third party who fails to establish his right to the property. We refer to § 14 of the Act, which in its pertinent part provides:

"In all cases where any claimant of property, under the provisions of sections 1171–1190 of this title, shall fail to establish his right thereto, judgment shall be rendered against him and his sureties for the value of the property, with legal interest thereon from the date of such bond.

"When such value is greater than the amount claimed under the writ, by virtue of which such property was levied upon, the damages shall be on the amount claimed under said writ."

*Riera* v. *Wolff's Auto Garage et al.*, 20 P.R.R. 172 (1914), is an example of the type of case to which this section refers. There, after the bond was given, the property taken by the attaching creditor was delivered to claimant therein. The latter had it under its control for more than five months. He then abandoned his claim and delivered the property to the creditor. The creditor filed a separate claim for damages against the claimant. The court fixed the amount for damages and plaintiff did not agree thereto. The latter appealed, the judgment was affirmed, and the Court stated at p. 178: "If the complainant, Riera, had by motion asked the court to fix the damages in the original intervention suit the court might have done so."

 Section 14 of the Act does not expressly state that the contingent action for damages of *the third party* can be joined to the original action for the trial of the best right to the ownership against the attaching creditor. But there is no reason for the action for damages, closely related as it is to the attachment which gave rise to the claim by third party, without it being required, not to be joined, prosecuted, and decided in the principal action of the claim by third party. On the contrary, the Act to provide for the trial of the right to real and personal property is not strict or restrictive in its text as it may be seen from its § 13 in providing that the "procedures . . . *shall conform,* as nearly as practicable, to the Rules of Civil Procedure in force. . . ." However, it seems to us that the general authority is on the trier, in first instance, to direct the proceedings in the exercise of a sound discretion, having in mind factors such as the congestion in the trial docket, avoiding confusion as to the questions in controversy in the case of the trial of the right to real and personal prop-

erty and in that of damages, and the undue delay or prejudice to the right of the parties to an adjudication on the principal issue of the claim by third party, adopting such measures of our ordinary procedural law as are necessary to attain a fair solution of the controversy.

This is not extraneous in our procedural law.[5] Rule 14.2 of the Rules of Civil Procedure permits the *joining* of contingent claims with the main claim, the former depending on the decision of the latter.

"Whenever a claim is cognizable after another claim is prosecuted to a conclusion, the two claims may be joined in the same action. The court shall not dispose of the contingent claim until after the determination of the main claim."

Our case law also presents examples thereof. Within the summary proceeding for the restitution of personal property established by the Conditional Sales Act (Act No. 61 of April 13, 1916, 10 L.P.R.A. § 36), we have acknowledged that it is possible to litigate the purchaser's defenses involving the defects of goods sold, or that there was breach of warranty on the part of the vendor. *Mattei & Co., Inc.* v. *Maldonado,* 70 P.R.R. 443 (1949); *Universal Credit* v. *Superior Court; Gatell, Int.,* 77 P.R.R. 543 (1954); *Millán* v. *Caribe Motors Corp.,* 83 P.R.R. 475 (1961). In *Mattei, supra,* we said at pp. 447–48:

". . . We think, therefore, that since the parties are before the court and said court has jurisdiction over them and over the matter and that as the parties are given the opportunity to appear and be heard regarding their claims and rights, the better practice should be to determine within the very action for recovery of possession such claims or rights, rather than to con-

---

[5] The trial of the right to real and personal property is quite similar to the mechanism provided by the rules on intervention. Rule 21.1. "Upon timely application, anyone shall be permitted to intervene in an action. . . (c) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court."

fine itself to the single fact of whether or not there has been noncompliance with the contract of conditional sale by the purchaser and, therefore, whether the restitution sought lies."

The question which remains to be decided is whether, actually, the minimum requirements of a due process of law justifying the Resolution and Order having the effect of a judgment in this case were fulfilled. In the first place, the fact that in the entire record there does not appear in any place whatsoever anything even remotely similar to a *complaint* or *allegation* establishing a valid and sufficient claim for damages strongly calls our attention.

The third party's "complaint" and its "sworn statement" were intended to obtain a judicial decision "declaring that Julio Garriga, Jr., Inc., has been, was, and is, the owner of the automobile object of this trial of the right to real and personal property."

It is only after notice of a motion requesting the dismissal of the action for the trial of the right to real and personal property for nonappearance of the third party was served by the other party that the latter, in a motion explaining the reasons for the nonappearance, "informed" that when "the vehicle was returned to it . . . its exterior was completely covered with a white dust, like paint, and the generator and the front wheel brake band were damaged, defects which the vehicle did not have at the time of the attachment."

This was the "allegation" which served as the basis for the Resolution and Order entered by the District Court by "default" of appellant herein. This allegation does not constitute a valid claim for damages. There is not one single allegation of negligence. There does not appear from the record one single notice to appellant herein in the sense that it was confronting an action for damages; nor the fixing of a term, nor the right to answer it, nor that a judgment in default would be entered against it. Appellant was only notified, by virtue of § 12 of the Act to provide for the trial of the right to

real and personal property, 32 L.P.R.A. § 1182, that if it failed to appear, judgment "declaring the third party owner of the Dodge vehicle," would be entered. Rule 44.3 of the Rules of Civil Procedure dealing with judgment by default, provides:

"Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled; even if the party has not demanded such relief in his pleadings; *however a judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.*" (Italics ours.)

In this case not only a Resolution was entered, which for all purposes has the effect of a judgment, *different in kind* from the declaration of ownership of the automobile which was the purpose sought by the third-party claim proceeding brought by the third party, but also some items for damages were included which were not even set forth in the informative motion filed by the third party. Only certain defects which appeared in the automobile were informed there. But the Resolution grants for damages, in addition to the defects, $275 for "expenses for the annulment of the attachment and to minimize the damages, including actions, attorney's fees, and bond"; $50 for "costs of other transportation during the time the vehicle was under attachment and repair," plus $125 for "costs, expenses and attorney's fees for the third party's attorney in this proceeding."

Such additional remedies could not be granted against the party in default in the absence of the notice to the other party in the manner provided by Rule 4 for the service or summons.[6] This was not done in this case.

---

[6] Rule 67.1 of the Rules of Civil Procedure provides:

"Every order required by its terms to be served, every pleading subsequent to the original complaint, unless the court otherwise orders because of numerous defendants, every written motion other than one which may be heard ex parte, shall be served upon each of the parties affected thereby. No service need be made on parties in default for failure to appear, except

The Resolution and Order object of this appeal will be modified in the sense of leaving in force *only* the adjudication in relation to the ownership of the vehicle object of the third-party claim, eliminating all those pronouncements concerning the granting of damages and the order to pay attorney's fees in the appeal prosecuted in the Superior Court.

---

that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4."